HOOD, Judge.
This is a workmen’s compensation suit, instituted against plaintiff’s employer and its compensation insurer, in which plaintiff claims that he is totally and permanently disabled. The trial court concluded that he sustained only a twelve per cent partial permanent disability of his right hand, and judgment was rendered awarding him compensation at the rate of $12.48 per week for 150 weeks, subject to a credit for the sums of money theretofore paid. Plaintiff has appealed, and defendants have answered the appeal.
The sole question presented relates to the nature and extent of the disability. Plaintiff contends that the judgment should be amended to award him maximum benefits for 400 weeks. Defendants contend that the judgment should be reversed, rejecting plaintiff’s demands. They contend, alternatively, that it should be amended to award compensation based only on the partial loss of use of a finger, rather than a hand, or in the further alternative, that the judgment should be affirmed.
Plaintiff injured his right hand on July 2, 1963, while working for Lafayette Well Service, Inc., as a derrickman on an oil well drilling rig. A valve on a mud pump blew out, causing a one-half inch steel rod to go through plaintiff’s right hand, breaking the second metacarpal bone and causing severe tissue damage. Immediately after the accident occurred, plaintiff was taken to a general practitioner, who performed surgery on his hand to re-align the fractured bone. He was then referred to Dr. Guy J. Dunning, Jr., an orthopedic surgeon, for further treatment. About two months later, x-rays revealed that there was a non-union of the bone, so on September 9, 1963, Dr. *56 Dunning performed an open reduction, and a bone graft was applied. The fracture then healed with good alignment of the bone, and Dr. Dunning discharged plaintiff on December 2, 1963, as being able to return to his employment.
Defendants paid compensation benefits at the maximum rate from the date of the accident until December 24, 1963, covering a period of 25 weeks, and amounting to the total sum of $875.00. They also paid all of the medical expenses incurred by plaintiff, amounting to $1315.15.
Plaintiff was twenty years of age at the time the accident occurred. He had been employed to work as a roughneck or derrick-man, and his duties included keeping the pumps in good condition, helping the floor hands, and climbing in the derrick to wash the rig and to attach sections of pipe to an elevator as they were being lowered into or being pulled out of the hole. He testified that he does not feel that he can now perform that type of work because he cannot close his right hand like he used to, that it is not as strong as it was, that it hurts when he bumps the top of his hand, and that it pulls when he closes his hand. In a deposition taken prior to the trial, he stated that he thought he could perform the same type of work now, except that he was afraid that he would bump his hand.
Plaintiff has not worked since the date of the accident. He did enlist in the National Guard, however, and he spent six months in training at Fort Polk. Also, since the accident, he has received unemployment compensation payments while not on active duty with the National Guard, he has applied for jobs at various places, he has done some hunting, he has played softball and he has coached a softball team.
The evidence shows that plaintiff now has a two-inch scar over the dorsum of the second metacarpal bone and a one-inch scar in the palm of the right hand. There is a slight thickening of the shaft of the second metacarpal due to the increased bone mass, and this causes a slight prominence on the back of the hand. The medical experts agree that there is some stiffening of the index finger of the right hand, but that none of the other fingers of that hand have been affected in any way.
Dr. Dunning, the treating orthopedist, testified that at the time he discharged plaintiff there was “some slight stiffness” in the interphalangeal joint of the right index finger, that there was no “significant limitation,” that plaintiff could close his fist and make a complete grip “just as good as he could before,” and that there was no reason for him to have any significant pain. He stated that there was a resulting weakness of the interosseous muscle, which did not impair the grip, and he noted the prominence on the back of the hand. Dr. Dunning is of the opinion that at the time he discharged plaintiff, on December 2, 1963, he was able to perform all of the duties of oil field workers, including those of roughnecks and derrickmen on oil well drilling rigs. In view of the weakness of the inter-osseous muscle, the bony prominence and the slight stiffness of the index finger, Dr. Dunning concluded that plaintiff had a five per cent disability of the right hand.
Shortly before the trial, plaintiff was examined by Dr. Edward T. Haslam and by Dr. William L. Meuleman, both of whom are orthopedic surgeons. They found that plaintiff has a permanent partial loss of the use of his index finger. Both of these physicians agreed with Dr. Dunning, however, that the partial loss of use of the finger or hand was not sufficient to disable him from performing the duties of his employment, and that he could do all of the work of a roughneck or a derrickman on an oil well drilling rig.
Dr. Haslam found that the metacarpal phalangeal joint of the index finger flexed only to forty-five degrees, whereas it should flex to ninety degrees, and that there was a five-degree loss of flexion of the proximal phalangeal joint. The motion in the distal joint was good. He concluded that as a result of the accident plaintiff had sustained *57 a forty-three per cent disability of the index finger, an eleven per cent disability of the hand, or a ten per cent disability of the right upper extremity. Dr. Meuleman found that plaintiff had a thirty-degree arc of motion of the index finger, and that it was useful for punching and hooking functions, although it contributes little to grasping. He felt that plaintiff had sustained a twenty per cent loss of use of the function of the hand, and he suggests that in time plaintiff may want to have the finger amputated.
The lay evidence presented by plaintiff consisted of the testimony of two oil well drillers, one of whom is plaintiff’s uncle. Both of these witnesses conceded that a man "who doesn’t have the use, say, of his right index finger,” is able to perform the duties of a roughneck or derrickman, but they are of the opinion that such a condition would probably slow him down, and that there would be danger to the man himself while he is on the derrick and pipe is being pulled out of the hole. They stated that they would not hire such a man unless they were unable to get another man with a better hand. We note that as a basis for this opinion these witnesses were required to assume that plaintiff has no use of his finger, whereas the evidence shows that he has full strength in and considerable use of the index finger in spite of the fact that there is some stiffness in it The trial judge apparently was not impressed with this testimony, and neither are we, for the reasons herein shown.
 We think the evidence clearly supports the conclusion reached by the trial judge that by December 2, 1963, when compensation payments were discontinued, plaintiff had recovered from his injuries sufficiently to enable him to return to hard manual labor, including all of the same type of work he was performing prior to and at the time of the accident. We also concur in the finding of the trial court that as a result of the accident plaintiff has sustained a twelve per cent permanent partial loss of use of the right hand, and that he is entitled to recover compensation benefits on that basis, subject to a credit for the amounts heretofore paid as compensation.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.